**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **MONA HEDRICK,** | § | |
| ***on behalf of* E.M.A. (minor child)** | § | |
| | § | |
| **V.** | § | **A-15-CV-463-LY** |
| | § | |
| **CAROLYN W. COLVIN, ACTING** | § | |
| **COMMISSIONER OF THE SOCIAL** | § | |
| **SECURITY ADMINISTRATION** | § | |

## MEMORANDUM OPINION

Before the Court are Plaintiff's Brief in Support of Claim, filed on October 27, 2105 (Dkt. No. 17), and Defendant's Brief in Support of the Commissioner's Decision, filed on November 22, 2015 (Dkt. No. 18). Also before the Court is the Social Security record filed in this case (Cited as "Tr.").

## I.  GENERAL BACKGROUND

Plaintiff Mona Hedrick ("Hedrick") on behalf of her minor child, E.M.A., seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying E.M.A. Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. On August 3, 2009, E.M.A. was born prematurely at 26 weeks-old, weighing approximately 1.83 pounds. On August 27, 2009, the Commissioner determined that E.M.A was disabled due to her low birth weight and awarded her SSI benefits. Tr. at 32. Pursuant to the regulations, in July 2011, the Commissioner conducted a periodic continuing disability review of E.M.A. to determine if she was still eligible for disability benefits. After reviewing the medical records and listening to testimony from E.M.A. and her mother, the Commissioner found that E.M.A.'s "weight has progressed to fall within the normal growth curves for children her age." Tr.

at 75.  Accordingly, the Commissioner determined there had been medical improvement of E.M.A.'s impairment of low birth weight and "she no longer meets the disability requirements as of July 2011."  Tr. at 54, 75.

Hedrick appealed this decision and it was upheld on reconsideration on August 9, 2012. Hedrick then requested a hearing before an Administrative Law Judge ("ALJ") and on November 15, 2013, the ALJ held a video hearing in San Antonio, Texas.  Although Hedrick was informed of her right to representation, she appeared at the hearing (via videotape from Austin, Texas) without the assistance of an attorney or a representative.  E.M.A., who was four-years old at the time of the hearing, did not attend because she was at home with a fever.  On December 16, 2013, the ALJ issued her decision concluding that E.M.A. was no longer disabled as of July 1, 2011.  Hedrick appealed and on April 1, 2015, the Appeals Council denied Hedrick's request for review.  Hedrick now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Hedrick argues that the ALJ's finding that E.M.A. is no longer disabled is not supported by substantial evidence in the record.

## II. STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. See 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues de novo, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995). The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112–13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey*, 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992).

## III.  ANALYSIS

### A.    <u>The Law</u>

"A child is entitled to disability benefits if he or she has a severe medically determinable physical or mental impairment or combination of impairments that cause marked and severe functional limitations, and that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." *Handy v. S.S.A.*, 2015 WL

6438906, at *2 (E.D. La. Oct. 22, 2015) (citing 20 C.F.R. §§ 416.906, 416.924).  The analysis looks at three questions:

(1)  Is the child engaged in substantial gainful activity?
(2)  Does the child have a severe impairment or combination of impairments?
(3)  Does the severe impairment(s) meet, medically equal, or functionally equal the severity of any impairment listed in Pt. 404, Subpt. P, App. 1 (the listings)?

*Id.* (citing 20 C.F.R. § 416.924(a)-(d)).  In evaluating the functional equivalence at step three, the Commissioner considers how a child functions in his activities in terms of six domains of functioning, including:

(1)  acquiring and using information;
(2)  attending and completing tasks;
(3)  interacting and relating with others;
(4)  moving about and manipulating objects;
(5)  caring for himself; and
(6)  health and physical well-being.

*Id.* (citing 20 C.F.R. § 416.926a(b)(1), (g)-(l)).  Functional equivalence means that the impairment is of listing level severity and results in "marked" limitations in two of the six domains of functioning or an "extreme" limitation in one domain.  *Id.* (citing 20 C.F.R. § 416.926a(a)).  A "marked" limitation in a domain is when an impairment interferes seriously with the child's ability to independently initiate, sustain, or complete activities.  *Id.*  An "extreme" limitation interferes very seriously with the child's ability to independently initiate, sustain, or complete activities.  *Id.*

A child who has been found disabled must periodically undergo a continuing disability review to determine if he is still eligible for disability benefits. 20 C.F.R. § 416.994a(a).  The Commissioner first evaluates whether there has been medical improvement in the impairments the claimant had at the time of the most recent favorable determination, *i.e.*, the comparison point date ("CPD").  20 C.F.R. § 416.994a(b)(1); Social Security Ruling ("SSR") 05–03p.  If there has been

4

medical improvement, the Commissioner next considers whether the impairments the claimant had at the time of the CPD still meet, or medically or functionally equal the severity of the listing applicable at that time. 20 C.F.R. § 416.994a(b)(2); SSR 05–03p. If they do not, the Commissioner proceeds to consider whether the claimant's current impairments are disabling under the same rules used to make the initial determination of disability. 20 C.F.R. § 416.994a(b)(3); SSR 05–03p.

## B. The ALJ's findings

"After reviewing all of the evidence of record," the ALJ determined that E.M.A's disability as a result of her prematurity with low birth weight ended as of July 1, 2011, and that she had not become disabled after that date. Tr. 15.[1] Specifically, the ALJ found that her impairment of prematurity with low birth weight had medically improved and no longer resulted in marked and serve functional limitations. The ALJ noted that the medical records showed that E.M.A. "was now growing at a normal growth rate." Tr. 19. Although the ALJ found that E.M.A. had impairments of asthma and a voice disorder, she found that the impairments did not meet the listings in the regulations. The ALJ found that since July 1, 2011, E.M.A. had the following limitations in the six domains of functioning: (1) less than marked limitation in acquiring and using information; (2) less than marked limitation in attending and completing tasks; (3) less than marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) no limitation in the ability to care for herself; and (6) less than marked limitation in health and physical well-being. Tr. 25-27. The ALJ concluded that E.M.A.'s impairments or combination of impairments did not result in either "marked" limitations in two domains of functioning or "extreme"

---

[1]It what appears to be either typographical or transcription errors, the ALJ refers at times to the disability as being prematurity with both a low birth "rate" and a low birth "weight." *See, e.g.,* Tr. 18. 24. It appears clear that the correct description should be a low birth "weight."

limitations in one domain of functioning.  Tr. 27.  Accordingly, she found that E.M.A. was not disabled within the meaning of the Social Security Act.

## C.  Substantial evidence supports the ALJ's decision

Hedrick argues that the ALJ's decision is not supported by substantial evidence.  The Court disagrees. Hedrick's own testimony at the hearing before the ALJ provides substantial evidence to support the ALJ's determination.  Hedrick testified that E.M.A., who was four-years old at the time of the hearing, was within normal growth charts and was attending preschool.  Tr. at 45.  Hedrick further testified that although E.M.A. often misbehaves and acts out when she doesn't get her way, she admitted that E.M.A. has not been diagnosed with any impairment.  While Hedrick testified that E.M.A. has asthma, she acknowledged that E.M.A. has never been to the emergency room for it. She also noted that E.M.A. attends speech therapy for a hoarse voice and a lisp.  Tr. 45-6.  Other than the above, Hedrick testified that E.M.A. had no other impairments, and admitted that she walks and runs without any issues and appears to have no difficulty learning her letters, numbers and colors in preschool.

The medical records also overwhelmingly support the ALJ's finding in this case.  After E.M.A.'s rough start of being born prematurely at 26 weeks and spending three months in the Neonatal Intensive Care Unit, E.M.A. did not experience any serious long term impairments. Instead, it appears that E.M.A. has thrived.  Though she has experienced some illnesses, they have been common childhood illnesses such as minor skin irritations, colds, mild asthma, hoarseness and some speech issues which have been resolved with speech therapy.  Hedrick is unable to point to any treating or consulting physician after July 2011 who ever declared that any of E.M.A.'s impairments, singularly, or in combination, were disabling. *See Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989)

(substantial evidence supported ALJ's finding that claimant's subjective symptomology not credible when no physician on record stated that claimant was disabled).

For example, on December 22, 2010, at E.M.A.'s 15 month well check examination, her treating physician, Dr. Robert Lowrey, M.D., noted that E.M.A. could use a spoon, stack 3 to 4 blocks, use 3 to 5 words, turn pages in a book and could walk and run.  Tr. at 275.  E.M.A. weighed 24.12 pounds and was 30.5 inches in height, both within the normal range of percentiles for her age. Dr. Lowrey's assessed E.M.A. as a "well child." *Id.*  In September 2012, E.M.A.'s treating physician noted that E.M.A. has "been quite healthy" other than occasional nosebleeds, reflux and a history of cutaneous abscesses.  Tr. at 480.

In May 2012, when E.M.A. was two years old, Dr. Karen Wright, M.D., a cardiologist, noted that E.M.A "has been subsequently well" since her three-month stay in the NICU.  Tr. at 481.  The physical examination was negative for any impairments and revealed that E.M.A.'s height and weight were within normal limits (height at 35th percentile and weight at 73rd percentile).  *Id.*  Dr. Wright noted that E.M.A's chest was normal and there were "no rales, rhonchi or wheezes." Tr. at 482.  An electrocardiogram demonstrated "normal sinus rhythm, normal axes and normal voltages." *Id.*  The only abnormality detected was "a common innocent murmur in children."  *Id.*  Dr. Wright opined that no treatment was necessary and noted that E.M.A. "may engage in all activities, without restrictions."  *Id.*

Hedrick appears to suggest that the ALJ erred by failing to conclude that E.M.A's speech impairment is disabling.  The medical evidence in the record, however, shows that E.M.A's speech impairment resolved with speech therapy.  In August 2011, E.M.A. began receiving speech therapy when she was almost two years old due to "moderate receptive-expressive language delay." Tr. at

485.  Before speech therapy, E.M.A. was given the Preschool Language Scale-4 test and received a receptive language score of 75, a standard expressive communication score of 75 (both in the 5th percentile) and a total language score of 72. Tr. at 199 and 484.  The therapist found that E.M.A.'s speech disorder "diminishes her ability to effectively make her wants and needs know[n] and could negatively impact her safety." *Id.* Accordingly, speech and language therapy was recommended "in order to provide the patient with better language skills, allowing her to more effectively express her wants and needs." *Id.*  The therapist noted E.M.A.'s "prognosis is good." Tr. 200.

Consistent with this, after five months of speech therapy, E.M.A. was given the Preschool Language Scale-4 test again and this time scored within normal limits for her age range. *Id.*  E.M.A. received a receptive language score of 91, and an expressive language score of 97.  *Id.*  A standard score in the range of 85 to 115 is considered to be within normal limits.  *Id.*  E.M.A.'s articulation skills were also assessed to be within normal limits.  On March 27, 2012, E.M.A. was discharged from speech therapy because it was no longer needed.  Tr. at. 485.  Impairments that are resolved with treatment are not disabling.  *See Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability.").

In July 2013, Hedrick took E.M.A. to a different speech therapist to determine whether she needed speech therapy. Speech therapist Tonya Dickey M.S., CCC/SLP, evaluated E.M.A. and determined that E.M.A.'s scores were within normal limits for a child of her age. Tr. at 469. Accordingly, the speech therapist determined that E.M.A. "Does not qualify for speech therapy at this time." *Id.*  This evidence supports the ALJ's determination that E.M.A.'s voice/speech disorder is not disabling.

The medical records also show that E.M.A.'s hoarseness is not disabling.  In January 2013, Dr. Kevin Kriesel, MD, an Ear, Nose and Throat physician, examined E.M.A. (who was three-years old at the time) for hoarseness and drainage.  Other than her congestion, hoarseness and enlarged adenoids, Dr. Kriesel's examination was "otherwise unremarkable." Tr. at 474.  Dr. Kriesel recommended that E.M.A. undergo an adenoidectomy with laryngoscopy to remove her adenoids and resolve her chronic nasal drainage, asthma and hoarseness.  Tr. at 474.  However, Hedrick testified at the hearing that she did not consent to the surgery because she was afraid something would go wrong.  "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).[2]

Hedrick also admitted at the hearing that although E.M.A. had been diagnosed with asthma, she has never been hospitalized for that condition.  A diagnosis of asthma alone is not sufficient to establish a disability. *Sprague v. Colvin*, 2014 WL 4810007, at * 3 (N.D. Tex. Sept. 25, 2014).  For asthma to be presumptively disabling, Listing 103.03 requires that asthma be accompanied by one of the requirements enumerated in subsections A–D of the listing. *Id.* The ALJ specifically considered Listing 103.03A, finding that the medical records did not demonstrate that E.M.A met the levels required by the Listing. Tr. at 24.  Hedrick fails to point to any medical evidence that contradicts the ALJ's finding on this point.

Hedrick also complains that the ALJ dismissed evidence regarding concerns about claimant's behavior and how she gets along with others.  However, the evidence in the record shows that while

---

[2] *See also*, *Johnson v. Sullivan*, 894 F.2d 683, 685 N. 4 (5th Cir. 1990) (plaintiff would not be found disabled where he failed to follow the treatment regimen prescribed by his physicians); *Nichols v. Astrue*, 2012 WL 1802472, at *6 (S.D. Miss. Feb. 17, 2012) ("A medical condition that can reasonably be remedied by either surgery, treatment, or medication is not disabling, and the failure to seek treatment is an indication of non-disability.").

E.M.A. had some age appropriate behavioral issues, there was no indication that such issues were severe or disabling.  In fact, Hedrick admitted during the hearing that E.M.A. had never been diagnosed with a behavioral impairment and that she had been told by E.M.A.'s treating physician that she would most likely "grow out" of such behavior.  Tr. at 47.  Hedrick also admitted that she has made friends at preschool.  Tr. at 46.

The state medical consultant's report also supports the ALJ's determination that E.M.A. was not disabled.  After evaluating E.M.A.'s medical records, the state medical consultant, Dr. Patricia Nicol, M.D., concluded that E.M.A. did not have a severe medical impairment. Tr. at 286.  Dr. Nicol noted that E.M.A. was between the 25th and 50th percentile for both height and weight at her unadjusted age.  In addition, she found that the medical records showed normal development and significant medical improvement.  *Id.*

Based upon the foregoing, the Court finds that substantial evidence supports the ALJ's determination that E.M.A.'s disability ceased due to medical improvement and that her current impairments are not disabling.

D.    **Consultative Psychological Examination**

Hedrick argues that the ALJ failed to adequately develop the record by not ordering a consultative psychological examination in this case.  The Court disagrees.

The decision to obtain a consultative examination is within the ALJ's discretion and must be ordered only when necessary to develop a full and fair record. *See Reynaud v. Astrue*, 226 F. App'x 401, 403 (5th Cir.) (citing *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989); *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir.1989)), *cert. denied*, 552 U.S. 932 (2007).  "To determine whether the ALJ fully and fairly developed the record, [the Court] asks whether the record contained

10

sufficient evidence for him to make an informed decision.  So long as such evidence exists, the ALJ need not have supplemented the record with additional evidence." *Hernandez v. Astrue*, 269 F. App'x 511, 515 (5th Cir. 2008) (citing 20 C.F.R. §§ 404.1516, 416.916); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir.1996); *Anderson*, 887 F.2d at 634).  An examination at government expense is not required unless the record establishes that such an examination is necessary to enable the Secretary to make a decision on disability. *Id.*; *see also,* 20 C.F.R. § 416.919a(b) (the Commissioner may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on a claim).  "A consultative evaluation becomes 'necessary' only when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment." *Brock*, 84 F.3d at 728.  Even if an ALJ errs by failing to obtain additional medical evidence, the Court will not reverse the decision of an ALJ for failure to fully and fairly develop the record "unless the claimant shows that he or she was prejudiced by the ALJ's failure." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000).  "To establish prejudice, a claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.' " *Id.* (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)).

The record does not demonstrate that a consultative psychological examination was necessary to make the disability determination in this case.  The ALJ properly evaluated E.M.A.'s impairments and the completeness of the record before making the disability determination.  Hedrick has failed to offer sufficient evidence indicating that E.M.A. had a mental impairment that warranted further development of the record.  Accordingly, the ALJ had no reason to obtain a consultative psychological exam and had sufficient evidence to decide the case.  Hedrick fails to explain how any

of the potential evidence from a consultative examination would change the ALJ's findings and fails to establish prejudice and the necessity of a consultative examination.  *See Brock*, 84 F.3d at 728.

## IV. CONCLUSION

For the reasons set forth herein, the Court **AFFIRMS** the decision of the Social Security Commissioner in this case.  A judgment will be entered contemporaneously with this Memorandum Opinion.

SIGNED this 23rd day of May, 2016.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE